IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

BILLY R. BROOKS,

        Plaintiff,

v.                         CIVIL ACTION NO. 5:09-cv-01166

MICHAEL H. HOLLAND, et al.,,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed Defendants' Motion for Summary Judgment [Docket 13], Plaintiff's Motion for Summary Judgment [Docket 16], and the memoranda in support thereof. The Court has also reviewed Defendant's Response to Plaintiff's Motion for Summary Judgment [Docket 19]. Inasmuch as no response to Defendant's Motion for Summary Judgment has been made, the Court construes this as Plaintiff's intent to rely solely on his Memorandum in Support of his Motion for Summary Judgment.

I.

On August 29, 2002, Plaintiff, a West Virginia resident, applied to the United Mine Workers of America (UMWA) 1974 Pension Plan ("Pension Plan") Trustees for a disability pension, claiming that he was disabled as a result of an accident that occurred on July 16, 2001. The Pension Plan, which the parties agree qualifies as an employee benefit plan under the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, sets forth the eligibility requirements for a disability pension from the Pension Trust. The Pension Plan provides,

> A participant who has (a) at least 10 years of signatory service prior to retirement, and (b) becomes totally disabled as a result of a mine accident . . . shall, upon retirement (hereinafter "Disability Retirement"), be eligible for a pension while so disabled. A Participant shall be considered to be totally disabled only if by reason of such accident Participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits under Title II of the Social Security Act or its successor.

(Pension Plan, Art. II C.) Defendants, who are Trustees of the UMWA 1974 Pension Trust ("Trustees") denied Plaintiff's application and he initiated this lawsuit to appeal that decision. (Compl. ¶ 12).

Plaintiff was employed at U.S. Steel Mining Company, LLC, in Pineville, West Virginia, from July 10, 1978, until July 16, 2001, as a mechanic, miner and repairman. (AR 53-54.) Plaintiff was injured at work on October 12, 1999. The Report of Accident describes the injury as follows:

> Injured was going through a mandoor to check a pump. Injured placed his right knee on the flat part of the door and swung his left leg through the door. The door caught his right heel as he was exiting the door. This threw him off balance causing him to twist his back when he tried to catch himself with his hands as he started to fall to the mine floor.

(AR 84). Plaintiff missed approximately two (2) months of work following this incident. (AR 86.) Medical records relating to this event reveal that Plaintiff suffered from lower back pain as a result of the accident, but had been treated for back pain prior to the accident as well. (AR 198, 201-02, 204 .) In a report dated June 26, 2000, Dr. Orphanos, an orthopaedic surgeon, related that Plaintiff has suffered multiple back injuries dating back to 1978 and at one point had missed work for over one year following an injury in 1986. (AR 85.) Dr. Orphanos concluded that Plaintiff "sustained

2

a soft tissue injury involving the lumbar spine superimposed on mild to moderate degenerative changes and degenerative disc disease." (AR 87.)

Plaintiff continued treatment for his back injury after the accident, and on July 16, 2001, he suffered further injury to his back. He describes the July 16, 2001 incident only as an "injury" and "subsequent re-opening of an accident that occurred on Oct. 12, 1999." (AR 71.) No accident report was filed for the July 16, 2001, injury. Plaintiff underwent surgery on August 29, 2001, for a lumbar laminectomy and lumbar disectomy to treat the severe pain in his back and right leg. (AR 20.) After the surgery, one treating physician, Dr. Kostenko, opined on November 20, 2001, that Plaintiff had been working with a herniated disc for a "considerable period of time," and that "he just wore out," but did not specifically connect that condition with either the October 12, 1999, accident or the July 16, 2001, incident. (AR 32.)

On November 17, 1999, Plaintiff's application for Workers' Compensation benefits was approved based on the October 12, 1999, accident. (AR 206.) The Workers' Compensation Division of the West Virginia Bureau of Employment Programs found Plaintiff "eligible for necessary medical treatment, expenses and temporary total disability in relation to the injury, as it relates to the lumbar sprain/strain." (AR 206.) On July 19, 2001, Plaintiff filed a Claim Reopening Application with the Workers' Compensation Fund to secure additional temporary disability benefits due to his October 12, 1999, injury, beginning on July 16, 2001. In his application, in response to the question of whether he has suffered any other injuries since the injury upon which the claim is based, Plaintiff checked "Yes" and stated, "I had an increase in pain after working my shift on 7-16-01. I woke up with bad hip and leg pain and was unable to walk, sit or stand for any period." (AR

74.) On December 21, 2001, the Workers' Compensation Division sent Plaintiff a letter finding that he "continues to be disabled from working from 7/16/2001 through [8/9/2002]." (AR 168).

On April 28, 2002, Plaintiff applied for Social Security Disability benefits. In his application he states that his injuries first bothered him on July 16, 2001, and that he became unable to work on that day. (AR 157.) On August 16, 2002, the Social Security Administration ("SSA") sent Plaintiff a Notice of Award, stating the finding that Plaintiff became disabled on July 16, 2001, and that he is entitled to monthly disability benefits beginning January 2002. (AR 104.) A SSA Disability Determination and Transmittal Form determined the primary diagnosis to be "spinal disc disorders (discogenic/degenerative)" and the secondary diagnosis to be "affective disorders." (AR 167.)

Plaintiff filled out his application for a disability pension on August 29, 2002, and submitted it to the Pension Trust. (AR 53-54.) In his application he states that the accident that contributed to his disability occurred on July 16, 2001. (AR 54.) On June 30, 2003, a disability pension analyst sent Plaintiff a letter informing him that his application for disability pension had been denied. (AR 96.) Specifically, the letter stated that Plaintiff had "not established that [his] disability was caused by a signatory mine accident as required by Article II of the 1974 Pension Plan." (AR 96.) The letter recognized that Plaintiff was involved in a mining accident that meets the Pension Plan's requirements on October 12, 1999, but explained that there was no evidence that a mine accident occurred on July 16, 2001, Plaintiff's last day of work. (AR 97.) The letter further stated that no medical records prior to July 31, 2000, were included in Plaintiff's file for review. (AR 97.) Plaintiff appealed this decision on August 5, 2003, and submitted further medical evidence. He explained that there was no accident report filed for his July 16, 2001, injury because he did not realize how badly he had been hurt until after his shift ended. (AR 65-70.)

4

The same disability pension analyst sent Plaintiff a letter on January 14, 2004, denying Plaintiff's appeal for disability pension benefits. (AR 91.) The letter noted that no new records or materials were submitted along with Plaintiff's appeal, and it explained again that there is no documentation of a mining accident on July 16, 2001. The letter provides,

> While he sustained a back injury that resulted from a mining accident that occurred on October 12, 1999, Mr. Brooks' file does not contain actual contemporaneous treatment records for effects of this injury. The accident report shows he sought medical intervention. However, the earliest medical record on file is Dr. Kostenko's July 31, 2000 evaluation. He referred to prior medical intervention, but these records are not on file. The file alludes to a work-related back injury of July 16, 2001. However, there is no documentation of a mining accident at this time. The available medical records show Mr. Brooks sought treatment for low back and lower extremity pain. Conservative treatment failed, and he underwent surgery on two occasions for herniated discs. He improved, but some pain persisted. Due to chronic pain, his level of activity was reduced. Dr. Syed diagnosed depression and anxiety related to these conditions. Dr. Silk stated Mr. Brooks would not be able to return to work.
>
> The treatment records that begin with Dr. Kostenko's notes of July 31, 2000 relate Mr. Brooks' back complaints, treatment and resultant disabling conditions. However, lacking actual contemporaneous treatment records from October 12, 1999 to July 31, 2000 and/or evidence that a mining accident occurred on July 16, 2001, it would not be possible to establish the existence of a causal link between a mining accident and the basis for Social Security disability as is required by the 1974 Pension Plan. If these records could be obtained, it would be helpful in determining whether Mr. Brooks is disabled due to a mining accident.

(AR 93.)

Plaintiff either appealed the denial again or resubmitted his application. On December 16, 2004, the disability pension analyst sent Plaintiff a letter once again denying his claim for a disability pension benefit and informing him that his file was closed. (AR 65.) The letter stated,

> Review of the medical records verify that Mr. Brooks was involved in a mining accident on October 12, 1999. With the exception of a lumbar spine x-ray report dated October 14, 1999, there are no medical records contemporaneous to the mining accident. Lacking documentation specifically related to the mining accident, it

5

> would not be reasonable to conclude that his disabling back impairment was causally related to this accident.
>
> Subsequent to the October 12, 1999, mining accident, Mr. Brooks reportedly missed 2 months off of work, and he continued to work until July 16, 2001. Based on his work history and the lack of any treatment records related to a back condition proximal to the date of injury, it would not be reasonable to conclude the October 12, 1999, mining accident caused or significantly contributed to the "spinal disc disorders (discogenic/degenerative)" a basis of Mr. Brooks' Social Security disability benefits.

(AR 69.)

In his Complaint, Plaintiff asserts that he sustained a "totally disabling injury on October 12, 1999," and that he has been determined to be disabled by the SSA as a result of this mining injury. (Compl. ¶¶ 5-6.) He alleges that the Trustees of the Pension Plan "violated their duties as trustees by arbitrarily, illegally and capriciously denying plaintiff the subject benefits due him since all of the evidence on which said trustees based their decision to deny Plaintiff his Pension Trust Benefits indicated the Plaintiff was entitled to Retirement Disability pension under regulations of said Pension Trust." (Compl. ¶ 12.)

II.

On March 22, 2010, Defendants filed their Motion for Summary Judgment contending that Plaintiff failed to establish that a mining accident occurred on July 16, 2001. (Def.'s Mem. at 15.) Under Article VIII.B.(1) of the Pension Plan, the plan's Trustees are granted authority to promulgate rules and regulations to implement the Pension Plan.[1] Pursuant to this authority, the

---

[1] Article VIII.B(1) provides, "The Trustees are authorized to promulgate rules and regulations to implement this Plan, and those rules and regulations shall be binding upon all persons dealing with and Participants claiming benefits under this Plan."

Trustees use a set of inquiries, called "Q & As," to help them interpret the terms of the 1974 pension plan. To determine when a claimant is "totally disabled as a result of a mine accident," Q & A 252 provides that the determination is based on whether there is

> (1) Unexpectedness: The disability must have been unlooked for and unforeseen; (2) Definiteness: This disability must be traceable to a definite time, place and occasion which occurred within the course of the mine worker's employment. A progressive disease does not meet this test and therefore cannot be a disability that resulted from a mine accident; (3) Force or Impact: The disability must have been caused by the exertion or impact of the body against some external physical object; i.e. not simply the result of the mine worker's own physical condition.

(Def.'s Mem. at 15.) Defendants contend that there is no evidence in the record suggesting that the July 16, 2001, incident meets this definition. (Def.'s Mem. at 15.) Defendants concede that the evidence demonstrates Plaintiff sustained a mine accident on October 12, 1999, and that he is disabled. (Def.'s Mem. at 16.) However, Defendants assert that there is substantial evidence in the record that the October 12, 1999, accident was not the proximate cause of Plaintiff's Social Security disability. (Def.'s Mem. at 16.)

The SSA awarded Plaintiff disability benefits based on spinal disc disorders and affective disorders, dating from July 16, 2001. Defendants contend that the objective evidence supports the Trustees' decision that the October 12, 1999, accident did not cause these disc disorders inasmuch as the records indicate that Plaintiff had a history of back pain and previous back injuries. (Def.'s Mem. at 16-17.) Defendants note that Plaintiff's medical records from October 14, 1999, suggest only minimal degenerative changes and note that the injury was a back strain with the recommendation that he return to work in two months. (Def.'s Mem. at 17.) Defendants further note that "[t]here is no further record of any medical treatment, other than a visit with a chiropractor, until eight months after the mine accident," and that "Brooks' return to work and lengthy period with

no documented medical treatment indicate that his injury sustained on October 12, 1999, had been resolved." (Def.'s Mem. at 17.) Finally, Defendants contend that inasmuch as the SSA described Plaintiff's disability as degenerative, it is equivalent to a progressive disease and cannot meet the Trustees' definition of "totally disabled as a result of a mine accident." (Def.'s Mem. and 18-19.)

Plaintiff moved for summary judgment on April 1, 2010. In his supporting memorandum, he states that medical treatment rendered him able to return to work after his October 12, 1999, mining accident, but the impairments he suffered from that accident worsened. (Ptf.'s Mem. 1-2.) He points to a medical record from August 29, 2001, when he was admitted to Raleigh County Hospital for severe pain in his back and legs, stating that he has injured his back many times in the mines and the last injury was October 12, 1999. (Ptf.'s Mem. at 2; AR 224.) Plaintiff also cites 48 pages of medical records in support of his assertion that "[b]oth Dr. Silk and Dr. Kostenko attributed the claimant's problems to his injury of October 12, 1999 (e.g. AR, pages 4-52.)" (Ptf.'s Mem. 2.) However, the Court was unable to verify this assertion with the record, finding only one report by Dr. Silk in that range of pages that noted that Plaintiff injured his back on October 12, 1999, and then discussed the pain he developed in 2001, but did not necessarily connect the pain with the 1999 injury. (AR 37.)

Plaintiff asserts that the weight of the evidence demonstrates that he suffered a mine accident on October 12, 1999, and although he was initially able to return to work despite impairment, his impairments increased until the point of July 16, 2001, when he became completely unable to work and his disability was recognized by both the SSA and the Workers' Compensation division. (Ptf.'s Mem. at 7.) Plaintiff implies that his inclusion of the July 16, 2001 "accident" on his application for disability pension was actually an attempt to refer back to his October 12, 1999, accident. He

offers in support the evidence that after July 16, 2001, he reopened his Workers' Compensation application for the October 12, 1999, injury, and that the medical records in his Workers' Compensation file relate his impairment after July 16, 2001, back to the original 1999 mine accident. (Ptf.'s Mem. at 7.) Essentially, Plaintiff contends that the July 16, 2001, incident was an aggravation of his injuries caused by the October 12, 1999, accident. (Ptf.'s Mem. at 8.)

Defendants responded to Plaintiff's motion for summary judgment on April 15, 2010, that the Trustees did not abuse their discretion in denying Plaintiff's disability pension because the decision was supported by substantial evidence in the record. (Resp. 1-2.) They assert that Plaintiff overstates the evidence to the extent that his treating physicians discuss his October 12, 1999, mine accident, but do not attribute his disability to that accident. (Resp. 3.) Defendants resubmit evidence in the record that shows Plaintiff had a degenerative disc disorder prior to the mine accident and the evidence relied on by the Trustees showed, among other things, that Plaintiff indicated in his application for benefits that his disability began on July 16, 2001, that the SSA found that he is primarily disabled due to a degenerative disorder, that he was on pain medication prior to the 1999 accident for back pain, that he did not seek medical treatment for injuries relating to the 1999 accident between October 14, 1999, and June 20, 2000, that he has an extensive history of back pain dating back to at least 1978 and that his treating physicians described his condition as progressive. (Resp. 4-5.)

9

III.

The well-established standard in consideration of a motion for summary judgment is that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986). A "material fact" is a fact that might affect the outcome of a party's case. *See Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir.2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Id*. The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the non-moving party. *North American Precast, Inc. v. General Cas. Co. of Wis.*, Civil No.02:04-1306, 2008 WL 906334, *3 (4th Cir. Mar. 31, 2008). The non-moving party must satisfy their burden of proof by offering more than a mere "scintilla of evidence" in support of their position. *Anderson*, 477 U.S. at 252. If the non-moving party fails to make a showing sufficient to establish the existence of an essential element, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. If factual issues exist that can only be resolved by

a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate. *Anderson*, 477 U.S. at 250.

 A *de novo* standard of review generally applies to decisions made by Trustees of an ERISA benefit plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956 (1989); *Bynum v. Cigna Healthcare of North Carolina, Inc.,* 287 F.3d 305, 311 (4th Cir.2002). However, where the plan gives discretion to the administrator to determine eligibility for benefits or construe the plan's terms, the standard of review is whether the Trustees abused their discretion. *Sargent v. Holland*, 114 F.3d 33, 35-36 (4th Cir. 1997); *Haley v. Paul Revere Life Insurance Co.*, 77 F.3d 84, 89 (4th Cir. 1996). Specifically, the Court must consider, "(1) whether the plan confers discretion upon the administrator to make the decision at issue; and (2) whether the administrator's decision falls within the scope of discretion conferred." *Haley*, 77 F.3d at 89.

 Our Court of Appeals has held that the Trustees of the UMWA 1974 Pension Plan have discretionary authority and that their decisions to deny disability pensions satisfy both prongs of the *Haley* test. *Boyd v. Trustees of the UMWA Workers Health & Retirement Funds*, 873 F.2d 57, 59 (4th Cir. 1989). Thus, the Court reviews the trustees's decision to deny Plaintiff's disability pension for abuse of discretion.

### IV.

It is undisputed that on October 12, 1999, Plaintiff was involved in an accident that qualifies as a mine accident under the Pension Plan's disability pension eligibility requirements. It is also undisputed that Plaintiff is totally disabled under the same requirements inasmuch as he was

determined to be eligible for Social Security Disability Insurance Benefits under Title II of the Social Security Act. The only outstanding issue is whether Plaintiff became totally disabled as a result of the October 12, 1999, mine accident.

In *Lockhart v. UMWA 1974 Pension Trust*, 5 F.3d 74, 78 (4th Cir. 1993), the Fourth Circuit explained that "[t]he award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself." and "[i]f the denial of benefits is 'contrary to the clear language of the [p]lan,', the decision will constitute an abuse of discretion." *Lockhart*, 5 F.3d at 78 (internal citations omitted). To be eligible for a disability retirement pension, the Pension Plan requires that the participant "become[] totally disabled *as a result of* a mining accident." (Pension Plan, Art. II C) (emphasis added.) In considering whether the Trustees' denial was contrary to this clear language of the plan, the Court need not look further than Plaintiff's medical records on which the Trustees relied.

Plaintiff's medical records reflect a history of back pain and injuries tracing back to 1978. As Defendants note, at the time of the 1999 accident, Plaintiff was already on prescription pain medication for his back. (AR 204.) The record reflects that after the accident, Plaintiff was able to return to work on December 14, 1999, although he continued to seek treatment for his back. (AR 218.) His physicians diagnose him with degenerative disc disorders and chronic pain conditions, but none do much more than note that the 1999 accident occurred, if that. Most do not mention the accident at all, much less attribute the diagnoses to that single event. The only evidence Plaintiff can point to that connects his disability to the 1999 accident is a medical evaluation attached to his SSA determination, which states, "This 50 year old male has allegations of disability due to back pain from an injury on 10-12-99." (AR 105.)

The SSA determined Plaintiff to be disabled on July 16, 2001, and described his primary diagnosis as "degenerative" and "affective disorders." (AR 167.) According to Q & A 252, "miners who become disabled by progressive diseases or conditions . . . cannot be considered 'disabled as the result of a mine accident.' " (Def.'s Mem. 15.) The Fourth Circuit examined this language in *McCoy v. Holland*, 364 F.3d 166 (4th Cir. 2004) and found that, in light of that limitation,

> degenerative disc disease cannot be proximately caused by a mine injury for purposes of the UMWA 1974 Pension Plan. Accordingly, a mine worker whose SSDI award states that he is disabled as a result of degenerative disc disease must prove to the Trustees that a mine accident combined with or exacerbated his disc disease to proximately cause his disability.

*McCoy*, 364 F.3d at 172. The Court need not weigh Plaintiff's medical records and decide whether such evidence exists. Rather, a generous review of Plaintiff's medical records and SSA determinations show, at least, that the Trustees' determination that Plaintiff's disability was not a proximate cause of his disability is well-supported and reasonable.[2] Given the language of the Plan and the applicable law, there exists no genuine issue of material fact regarding the Plaintiff's eligibility for disability pension benefits and, therefore, the Trustees did not abuse their discretion in denying Plaintiff's disability pension application.

---

[2]It is noted that, in neglecting to respond to Defendant's motion for summary judgment or reply to Defendant's response to Plaintiff's motion for summary judgment, many of Defendants' arguments went uncontested. In conducting an abuse of discretion review, the Court need not satisfy *itself* that Plaintiff's disability was proximately caused by the 1999 mining accident, but rather simply note the "abundance of evidence supporting the Trustees' determination." *See McCoy*, 364 F.3d at 171. Even so, Plaintiff's failure to take the opportunity to point to specific evidence in the record that tended to prove this connection did nothing to bolster his argument.

Accordingly, the Court **ORDERS** that Defendants' Motion for Summary Judgment [Docket 13] be **GRANTED** and Plaintiff's Motion for Summary Judgment [Docket 16] be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: February 15, 2011

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA